UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _10/25/2021_
```

-------------------------------------------------------------------X

LG CAPITAL FUNDING, LLC,

                               Plaintiff,

            -v-

EXELED HOLDINGS INC.,

                               Defendant.

-------------------------------------------------------------------X

:
:
:
:
:
:
:
:
:
:
:
:
:

17-cv-4006 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

      This case is before the Court on review of a damages inquest conducted by Magistrate Judge Ona T. Wang. Dkt. No. 105. In her December 18, 2020 Report and Recommendation, the Magistrate Judge recommended that Plaintiff be granted a total of $531,556.20 in damages, reflecting the sum of damages for breach of contract, $396,303.44, and anticipatory breach, $135,252.76. *Id.* at 15. The Magistrate Judge also recommended that Plaintiff's request for attorneys' fees and costs be denied. *Id.* at 17, 20. Plaintiff timely filed objections to the Report and Recommendation on December 22, 2020. Dkt. No. 106.

## BACKGROUND

### I.    Relevant Facts

      The relevant facts were previously found in this Court's decision granting Plaintiff summary judgment in part and denying it in part following Defendant's failure to appear at trial. Dkt. No. 68. On September 24, 2019, the Court referred the action to the Magistrate Judge for a damages inquest. Dkt. No. 85.

      Plaintiff LG Capital Funding, LLC ("Plaintiff" or "LG Capital") is a Brooklyn-based limited liability company that lends capital to other companies. Defendant ExeLED Holdings

Inc. ("Defendant" or "ExeLED") was a publicly traded company focused on acquiring and growing specialized LED lighting companies.[1]  In August 2015, the parties executed two agreements: (1) a Securities Purchase Agreement (the "SPA"), Dkt. No. 26-1, and (2) a Convertible Redeemable Note (the "Note"), Dkt. No. 26-2.  After Plaintiff paid the agreed-to amount in the SPA to Defendant, Defendant delivered the Note, issued August 19, 2015, to Plaintiff.  The Note had a face value of $58,937.26, a maturation date of August 19, 2016,[2] and an 8% annual interest rate.  Dkt. No. 88 ¶ 2; Note at 1.  The Note allowed Plaintiff to convert all or a portion of its principal and accrued interest into common-stock shares of Defendant upon Plaintiff's written notice of conversion.  Note §§ 3, 4(a).  The conversion rate, as set in the Note, is "65% of the lowest closing bid price" of Defendant's common stock in the "fifteen prior trading days," including the date on which Defendant received the conversion notice.  *Id.* § 4(a) (emphasis omitted).  The Note further provides that if Defendant fails to deliver the requested stock within three days of the receipt of the conversion notice, there is an "Event of Default."  *Id.* § 8(k).  In an "Event of Default," Plaintiff may "consider [the] Note immediately due and payable . . . [and] may immediately . . . enforce any and all of the . . . rights and remedies provided [by the Note]."  *Id.* § 8.

The Note matured on August 19, 2016.  In February 2017, the parties entered into a redemption agreement ("Redemption Agreement") regarding the Note and a second note, not at

---

[1] On July 6, 2021, the SEC deregistered Defendant's securities for failure to file mandatory periodic reports.  Order Making Findings and Revoking Registration of Securities Pursuant to Section 12(j) of the Securities Exchange Act of 1934 as to ExeLED Holdings Inc., Exchange Act Release No. 92327, File No. 3-20011 (July 6, 2021).

[2] Both the Magistrate Judge in her Report and Recommendation and Plaintiff in its Objections stated that the maturity date of the Note was August 16, 2016.  Dkt. No. 105 at 2; Dkt. No. 106 at 1a.  Although it is immaterial to the disposition of this case, the documents reflect that the maturity date of the Note is actually August 19, 2016.  *See* Note at 1.

issue here.  Dkt. No. 26-10.  Defendant fulfilled the terms of the Redemption Agreement with regard to the second note but not the Note in this case.  On April 27, 2017, Plaintiff issued "a notice of conversion to convert $41,000.26 of principal and $10,028.78 of accrued interest" on the Note "into 10,195,162 shares" of Defendant's stock at a price of $0.005005 per share (the "Conversion Notice").  Dkt. No. 105 at 3 (quoting Dkt. No. 88 ¶ 4; Dkt. No. 68 at 3).  Defendant failed to perform and did not issue Plaintiff the stock.  Had Defendant performed, there would have been a balance of $17,937.00 remaining on the Note.  Dkt. No. 88 ¶ 5.

## II.  The Inquest and Report and Recommendation

The principal question for the inquest was the calculation of damages suffered by LG Capital from the failure of Defendant to deliver the shares.  The Magistrate Judge determined that the date of breach was May 3, 2017—the day after the expiration of the three business days Defendant had from the date of receipt of the Conversion Notice to deliver the shares.  Dkt. No. 105 at 6.  In so holding, the Magistrate Judge measured the three days to convert from the day after the Conversion Notice was received and determined that the breach occurred only after expiration of the three days (and thus did not include the third day).  The mean price per share on May 3, 2017 was $0.0433.  Dkt. No. 105 at 9.  The Magistrate Judge rejected the mean stock price of $0.04335 proposed by Plaintiff because it was based on a high price of $0.0537 on May 3, 2017, which was actually $0.0001 higher than the high price ($0.0536) listed on Plaintiff's declaration, Dkt. No. 97 ¶ 5; Dkt. No. 97-2 at 1.

The Magistrate Judge also concluded that the lowest closing bid price of Defendant's common stock in the fifteen trading days prior to the submission of the notice of conversion (including the date of the notice of conversion) occurred on April 6, 2017 and was $0.006813, and that 65% of that is most accurately calculated to be $0.00443.  Dkt. No. 105 at 9-10.  The figure of $0.005005 that Plaintiff used in the Conversion Notice was in error because it was

based on the use of the previous *fourteen* trading days, rather than the previous *fifteen* trading days. *Id.* at 9.

The Magistrate Judge thus calculated Plaintiff's expectation damages as the difference between the mean price per share on the date of breach, $0.04330, and the conversion price per share, $0.00443, which is $0.03887, multiplied by the 10,195,612 shares requested but not delivered. The product of those two figures is $396,303.44. *Id.* at 10.[3]

The Magistrate Judge also rejected Plaintiff's argument that, in addition to the value of the converted shares it did not receive, it was entitled to recovery of the $51,029.04 in principal and interest Defendant would have been relieved from paying had the conversion been effected. *Id.* at 11. The Magistrate Judge found that awarding Plaintiff that sum, in addition to the value of the shares previously calculated, would have resulted in a "double recovery" for Plaintiff and put it in a better position than if the shares had been transferred. The Magistrate Judge concluded that this was in direct violation of the Second Circuit's decision in *LG Cap. Funding, LLC v. CardioGenics Holdings, Inc.*, 787 F. App'x 2, 3 (2d Cir. 2019). In *CardioGenics*, the Second Circuit held that it was an error for the court to deduct from an award of expectation damages the principal and interest that would have been exchanged upon the conversion of shares, finding that by deducting "the conversion price from the damages award, the District Court awarded LG the equivalent of its lost profits on the conversion, but not the full value of the shares." *Id.* at 4. The Magistrate Judge rejected Plaintiff's argument that "because the Second Circuit held that it was improper to *subtract* principal and interest, it must therefore be proper to *add* the principal and interest." Dkt. No. 105 at 12. The correct method, the Magistrate Judge

---

[3] In its final submission, Plaintiff requested $449,448.06 in expectation damages based on 11,545,031 shares. Dkt. No. 105 at 10. The Magistrate Judge found that that share figure was in error because it appeared nowhere else in Plaintiff's filings. *Id.*

ruled, was "to leave the expectation damages as they are, neither adding nor subtracting principal and interest, because the principal and interest are already included in the expectation damages, which is what Plaintiff would have recovered if it converted the principal into shares." *Id.*

The Magistrate Judge also calculated Plaintiff's damages for anticipatory breach—the damages Plaintiff would have suffered with respect to its remaining $17,937.00 balance, on the anticipation that, because Defendant breached once, it would have breached again and not have converted the Note's remaining balance into shares if Plaintiff exercised its conversion rights.

The Magistrate Judge treated May 3, 2017 as both the date of the notice of conversion and the date of the breach for anticipatory breach purposes. Using that date, the lowest closing bid price in the fifteen trading days prior was on April 20, 2017, at $0.0078 per share, and 65% of that is $0.00507 per share. *Id.* at 14. At that price of $0.00507 per share, Plaintiff could have converted its $17,937.00 into 3,537,869.82 shares. Again using that date, the mean stock price on May 3 was $0.04330 per share. *Id.* The difference between the price per share on the date of the breach, $0.04330, and the conversion price per share, $0.00507, is $0.03823 per share. Multiplying $0.03823 per share by 3,537,869.82 shares, the Magistrate Judge calculated the expectation damages for the anticipatory breach of contract claim to be $135,252.76. *Id.* at 14.

The Magistrate Judge rejected Plaintiff's calculations. Plaintiff used the conversion price stated in the Conversion Notice, $0.005005, but the Magistrate Judge found that figure to be in error on the theory that the conversion price must be based on the date of the breach and not some earlier date. *Id.* at 14-15. She also rejected Plaintiff's alternative conversion price of $0.0052 on the theory that it was based on improper and inconsistent rounding. *Id.* at 15. Finally, the Magistrate Judge rejected the request for recovery of the remaining principal. *Id.* at 15.

5

The Magistrate Judge also recommended that the Court reject Plaintiff's request that it be awarded $74,310.00 in attorneys' fees and $497.97 in costs. *Id.* at 15-16. She reasoned that since Plaintiff's counsel had represented Plaintiff in at least forty-six proceedings arising out of similar notes in the Southern and Eastern Districts of New York, an unopposed inquest on damages should have been a simple matter. Instead, the Magistrate Judge maintained, Plaintiff's counsel committed repeated errors that "risked recovery at all for its client at multiple stages in the litigation," and "consumed and wasted considerable judicial resources doing basic arithmetic for Plaintiff when the Court could have been holding other hearings or resolving other pending motions." *Id.* at 17. The Magistrate Judge also found that, even if she were to award any amount of fees, the fee application merited significant reduction because it included time for preparing a motion that was "riddled with legal and factual mistakes," the hours claimed were "disproportionate to the work performed," included entries for purely administrative work and blockbilling, and billed at rates inappropriate for an associate not yet admitted to the bar. *Id.* at 17-19. The Magistrate Judge recommended denial of the request for costs because no Bill of Costs was attached, as required by the Local Rules of the Southern and Eastern Districts of New York. *Id.* at 20.

## III.    Plaintiff's Objections

Plaintiff argues that the Magistrate Judge committed numerous errors in her Report and Recommendation. Plaintiff argues that the Report and Recommendation used the incorrect market price per share and the incorrect conversion price per share, resulting in a miscalculation of the expectation damages. Plaintiff argues that the market price—the mean price per share on the claim for expectation damages—should be based on the prices on May 2, 2017, the last day Defendant had to deliver the shares, resulting in a mean price per share of $0.0483 rather than a mean price per share on May 3 of $0.0433. It also argues that the conversion price—the price it

6

would pay for the shares—should be based on the conversion price of $0.005005 reflected in the Conversion Notice, rather than the lower figure of $0.00442. Since the number of shares Plaintiff would be entitled to is calculated by dividing the amount of outstanding principal and interest to be converted by the conversion price, Plaintiff argues that if the court were to use the lower conversion price, it should use a greater number of shares. At the lower conversion price, the conversion of $41,000.26 in principal and $10,028.78 in interest would have entitled Plaintiff to 11,545,031 shares. Based on the May 2 market price and the conversion price from the April 27 Notice of Conversion, but using the number of shares Plaintiff would be entitled to at that conversion price, Plaintiff contends that its expectation damages should have been $441,419.02 rather than $396,303.44. Dkt. No. 106 at 13.

Plaintiff also argues that the Court calculated the damages from the anticipatory breach incorrectly. By using the same date for both the hypothetical conversion date and for the date of breach, the court adopted a methodology that was inconsistent with the terms of the Note and that resulted in Plaintiff receiving damages different than what it would have received had the Note been performed. Had Plaintiff submitted a new conversion for the balance of the Note on May 3, 2017, Defendant would have had three business days to deliver the shares, and the market value of the shares thus would have to be based not on their value on the date of the conversion notice, but on the date three or four trading days later when the shares were delivered. Plaintiff argues that the Court should have used April 27, 2017 as the putative conversion date and a conversion price of $0.005005, the date and conversion price for its breach of contract claim. Using those figures, Plaintiff would have been entitled to 3,583,816 shares on May 2, 2017. Using the expectation damages figure of $0.043295—the difference between the market

7

price and the conversion price—Plaintiff argues that its anticipatory damages should have been $155,161.31 rather than $135,252.76. *Id.* at 16.

Next, Plaintiff argues that it should have been repaid its principal and interest. With respect to its claim for expectation damages, it reasons that had Defendant honored its request on May 2, 2017, it would have had 10,195,612 shares worth $.0483 per share, or $492,488.062 in total. Because the Magistrate Judge did not award Plaintiff that sum but rather subtracted the conversion price of $.005005 per share—$51,029.04—from that total to arrive at the calculation of expectation damages, it should be entitled to recover that sum in the form of $41,000.26 in principal and $10,028.78 in interest. *Id.* at 17. In that way, it claims it would have been returned to the position it would have been in but for the breach: "Plaintiff would have had the shares with their full value and would no longer have the amounts of principal and interest paid. It is not double counting; it is adding the amount paid to the profits expected." *Id.* Plaintiff makes the identical argument on the claim for anticipatory damages. *Id.* at 19.

Finally, Plaintiff takes issue with the Magistrate Judge's recommendation that it should not be awarded attorneys' fees or costs. It argues that the Note entitles it to reasonable attorneys' fees, and given that it won partial summary judgment, a default judgment, and a recommendation to award damages in excess of $500,000.00, an attorneys' fee award of under $75,000.00 is reasonable. Plaintiff argues that the Magistrate Judge's recommendation is unnecessarily punitive.

## LEGAL STANDARD

When reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party raises an objection to a report and recommendation, "the court is required to conduct a *de novo* review of the contested sections." *Pizarro v. Bartlett*, 776

F. Supp. 815, 817 (S.D.N.Y. 1991).  However, when a party does not raise an objection, the "court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citing Fed. R. Civ. P. 72 advisory committee's note (b)).

## DISCUSSION

The relevant principles are set forth in previous opinions arising from breach of similar notes purchased by LG Capital and others.  "Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." *CardioGenics*, 787 F. App'x at 3 (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003)); *see also Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (noting the "fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract").[4]  "Where the breach 'involved the deprivation of an item with a determinable market value, the market value at the time of the breach is the measure of damages.'" *CardioGenics*, 787 F. App'x at 3 (quoting *Cole v. Macklowe*, 882 N.Y.S.2d 417, 419 (1st Dep't 2009)); *see also Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990) (same); *Union Cap. LLC v. Vape Holdings Inc.*, 2017 WL 1406278, at *6 (S.D.N.Y. Mar. 31, 2017) (same).  These rules apply here, where the action concerns the nondelivery of shares of stock.  "New York's damages rule is precisely the same when the breach of contract is

---

[4] The Note includes a choice-of-law provision stating that it "shall be governed by and construed in accordance with the laws of New York."  Note § 14.  As the Second Circuit has held, "[c]ontractual choice of law provisions are generally enforceable under both New York law and federal common law." *Arnone v. Aetna Life Ins. Comp.*, 860 F.3d 97, 108 (2d Cir. 2017); *see also Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (applying New York state law where "[t]he [a]greement in question contained a [New York] choice of law provision").

nondelivery of shares of stock." *Lucente*, 310 F.3d at 262 (alteration omitted) (quoting *Simon v. Electrospace Corp.*, 269 N.E.2d 21, 26 (N.Y. 1971)).

## I.     Principal and Interest

LG Capital argues that the Magistrate Judge erred in failing to grant it unpaid principal and interest.  According to Plaintiff, the Magistrate Judge's award failed to place it in the position it would have been in but for Defendant's breach—in possession of shares equivalent in value to the converted principal and interest.  Rather, Plaintiff contends that the formula used by the Magistrate Judge only awards it the lost *profit* from its entitled shares and not the underlying value of the shares themselves.[5]  In this regard, Plaintiff is correct.  By subtracting the conversion price from the market price in the calculation of damages, the Magistrate Judge deprived Plaintiff of recovering money it had *already* loaned to Defendant.  To restore LG Capital "to the economic position [it] would have been in absent the breach," it is necessary to include principal and accrued interest in the calculation of expectation damages.  *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 495 (2d Cir. 1995).  This applies to both the breach of contract and anticipatory breach damages calculations.

*CardioGenics* is directly applicable here.  *CardioGenics* involved a note identical in all material respects to the note here.  LG Capital elected to convert the full value of CardioGenics' unpaid balance on the Note, but CardioGenics failed to deliver.  The district court calculated LG Capital's damages as the Magistrate Judge did here: calculating the fair market value of the shares of CardioGenics stock at the time of breach, subtracting the conversion price, and multiplying the result by the number of shares LG Capital was entitled to upon conversion.  *LG Cap. Funding, LLC v. CardioGenics Holdings, Inc.*, 2018 WL 1521861, at \*9 (E.D.N.Y. Feb. 20,

---

[5] The formula used by the Magistrate Judge was (mean price per share - contract price per share) x number of shares.  Dkt. No. 105 at 10 n.11.

2018).  The district court concluded that the product constituted "LG's actual losses and ascertainable damages."  *Id.*  It rejected LG Capital's request for unpaid principal and interest, concluding that "LG is not entitled to both the value of what it would have received following conversion, and the principal due (plus interest) had it not converted the Note."  *Id.* at *11.

LG Capital complained on appeal that the District Court had erred in subtracting "from the actual loss calculation of the unpaid principal and unpaid interest that CGNH owed LG under the Note as of the date of breach," and the Second Circuit agreed.  *CardioGenics*, 787 F. App'x at 3.  The Second Circuit recognized that in contract cases involving stock options in which part of the breach involves the refusal to accept payment at the contract rate it had approved a formula similar to that applied by the district court: the formula subtracted the price to be paid for the conversion from the full value of the stock on the date of breach.  *Id.*  But the Second Circuit concluded that formula was "not applicable here, where LG had already paid the conversion price to CGNH in the form of the principal."  *Id.*  "[I]n subtracting the conversion price from the damages award, the District Court awarded LG the equivalent of its lost profits on the conversion, but not the full value of the shares.  Far from double recovery, this resulted in an award that fell well below the 'economic position LG would have occupied' had CGNH delivered the shares."  *Id.* at 3-4 (alteration omitted) (quoting *Oscar Gruss & Son*, 337 F.3d at 196).

That is precisely what happened in this case.  As in *CardioGenics*, LG Capital here already paid the conversion price to ExeLED in the form of principal:  It invested $58,937.26 in ExeLED.  The funds against which the conversion price was credited were funds in the possession of ExeLED.  The effect of the conversion, as in *CardioGenics*, was to reduce the money that ExeLED otherwise owed LG Capital in connection with the Note that LG Capital

had purchased.  By both (1) subtracting the conversion price from the value of the shares *and* (2) depriving LG Capital of the unpaid principal and interest to which it otherwise would be entitled as a result of that conversion, the Magistrate Judge did not return LG Capital to the position it would have been in but for the breach.  This calculation put L.G. Capital in a worse position and ExeLED in a better position.  The Magistrate Judge deprived LG Capital of the full value of the shares it was entitled to upon conversion, and then declined to give LG Capital credit for the lost principal and interest.  This unfairly benefits ExeLED.  Under the Magistrate Judge's recommendation, ExeLED's debt to LG Capital would in essence be forgiven, since it would not be required to pay back the debt to Plaintiff.[6]

Where, as provided for in a convertible note, a defendant fails to convert debt into shares and deliver them to the plaintiff, the calculation of expectation damages *must* include the principal and any accrued interest being converted.  Courts can do this in one of two ways: (1) "multiplying the number of shares owed . . . by the mean market value of that stock on the day of the breach," *CardioGenics*, 787 F. App'x at 4; or (2) multiplying the number of shares owed by the difference between the market price and the conversion price—as the Magistrate Judge did here—and then adding back the converted principal and any accrued interest.  Because Plaintiff requested the latter method, that is the formula the Court will adopt here.

---

[6] The Court recognizes that in *Union Capital LLC v. Vape Holdings Inc.*, 2017 WL 1406278, the court suggested that expectation damages should be "calculated by subtracting the contract price . . . from the market price of the shares on the date of the breach" and then multiplying that figure by the number of shares to be converted.  *Id.* at *6.  The Court does not read that dictum as having decided the question of whether a plaintiff is entitled either to the full value of the shares at the time of conversion or the principal and interest to which it otherwise would have been entitled absent conversion.  The statement was offered in response to the argument that specific performance should be awarded because damages were not ascertainable, and the court did not consider whether the plaintiff also would be entitled to principal and accrued interest.

## II.     Date of Breach

LG Capital also argues that the Magistrate Judge erred in determining the date upon

which the market price of the stock should be measured for purposes of calculating its claim of

damages.  It claims that it was entitled to damages based upon the market price on May 2, 2017

and not May 3, 2017.

Under New York law, damages for breach of contract are "determined by the loss

sustained or gain prevented at the time and place of breach."  *Electrospace Corp*, 269 N.E.2d at

26.  "[W]here [a] breach involves the deprivation of an item with a determinable market value,

the market value at the time of the breach is the measure of damages."  *Sharma*, 916 F.2d at 825.

Shares of traded companies are, "[a]s a general proposition, . . . considered to have an

ascertainable market value."  *Dopp v. Franklin Nat'l Bank*, 461 F.2d 873, 881 (2d Cir. 1972).[7]

The date of the breach is the date that must be used to calculate the market price of the stock.

There is some inconsistency and confusion in the case law as to the "time of the breach"

when a contract allows the defendant company a period of days after receipt of a conversion

notice to effect the conversion.  In *LG Capital Funding, LLC v. PositiveID Corp.*, 2017 WL

2556991, at *4 & n.9 (E.D.N.Y. June 12, 2017), the court assumed that the time of breach was

the date of the notice of conversion and that damages should be measured based on the market

price on that date, but that was based on the parties' agreement and the court did not conduct any

independent analysis.  In *Cottam v. Glob. Emerging Cap. Grp., LLC*, 2021 WL 1222120, at *6

(S.D.N.Y. Mar. 31, 2021), the court measured damages based on the market price on the day the

shares should have been delivered, and not on the following day.  In *Blue Citi, LLC v. 5Barz Int'l*

---

[7] It is of no consequence that ExeLED's stock is no longer publicly traded, *see supra* n.1, since the stock was publicly traded at the time of breach and at all pertinent times in this damages calculation.

*Inc.*, 338 F. Supp. 3d 326, 339 (S.D.N.Y. 2018), considering a similar circumstance as that at issue here, where the defendant was obligated to deliver conversion shares "within three business days" of the notice, it appears that Judge Caproni found that the breach did not occur until the third business day. Yet in *LG Cap. Funding, LLC v. 5Barz Int'l Inc.*, 307 F. Supp. 3d 84, 103 (E.D.N.Y. 2018), the court considered the same circumstance and held that the appropriate date of breach is the day *after* the three business days elapsed and not the third day. *See also LG Cap. Funding, LLC v. Accelera Innovations, Inc.*, 2018 WL 5456670, at *7 n.4 (E.D.N.Y. Aug. 13, 2018) (same); *LG Cap. Funding, LLC v. CardioGenics Holdings, Inc*, 2018 WL 1521861, at *8 (E.D.N.Y. Feb. 20, 2018), *report and recommendation adopted*, 2018 WL 2057141 (E.D.N.Y. Mar. 8, 2018) (same).

The Court concludes that the date of the breach here occurred on May 2, 2017, the final business day by which Defendant was obligated to deliver Plaintiff's shares.

First, the date of the Notice of Conversion, or any earlier date, is clearly not the appropriate date of breach. Using any of those dates is inconsistent with the terms of the Note. Under the Note, ExeLED could satisfy its obligations if it "delivered the shares of Common Stock to the Holder [of the Note] within 3 business days of receipt by the Company of the Notice of Conversion." Note § 4(a). As long as ExeLED delivered the shares by the third business day after receipt by the company, it would not be in breach. Therefore, the date of the breach cannot be any date prior to that.

Using May 3, the day after the three-business-day deadline expired, is also inapposite. Had Defendant performed, Plaintiff would have been in possession of the shares on May 2. "[T]he fundamental principle [in] damages for breach of contract [is that] the plaintiff [should be put] in the same economic position he would have been in had the defendant fulfilled the

contract." *Lucente*, 310 F.3d at 262.  Using May 3 as the date of breach violates that "fundamental principle," since Plaintiff would be in a *different* position than it would have been in had Defendant delivered the shares by May 2 as it was contractually obligated to do.  In *Accelera Innovations*, the magistrate judge justified using the day after the three-business-day deadline expired on the grounds that "[i]f Defendant had delivered the shares after trading hours on December 7th [the third day], which was its right under the Note's terms, then Plaintiff could have sold the shares on December 8, 2017 at the earliest."  2018 WL 5456670, at *7 n.4.  However, that argument holds little weight for two reasons.  First, it is wholly irrelevant at this stage to consider what Plaintiff will do with the shares once it receives them.  The date of breach is not dependent on when or if Plaintiff will sell its shares, it is only dependent on when Plaintiff should have received those shares.  Second, selling stock on the open market is not the only way to trade shares or realize value from them.  Plaintiff could have had an agreement in place to privately sell the shares at 11:59:59 PM on the last day it expected to receive its shares.  Plaintiff was entitled to the shares on May 2; to put Plaintiff in the position it would have been in had Defendant performed, it is necessary to use May 2 as the date of breach.

This rule also is consistent with New York's law of contracts.  The law holds that the measure of damages is based on the value of the shares as of the date on which the non-breaching party is entitled to them. "If the purpose of damages is to put the non-breaching party in the same economic position as if the breaching party performed its contractual duties, damages should be calculated from the date that the non-breaching party expected to receive the benefit of the contract."  *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 618 F. Supp. 2d 280, 294 (S.D.N.Y. 2009) (internal citations omitted); *see also Oscar Gruss & Son*, 337 F.3d at 197 ("[T]he date of the breach [is] the date [Defendant] failed to deliver the warrants."); M.F.L.,

Ann., *Measure of Damages for Breach of a Contract to Pay a Specific Sum in Stock, Notes, Bonds, or Other Securities*, 34 A.L.R. 931 (last updated 2021) (stating that the vast majority of courts to address this question "hold[] that, for the breach of a contract to pay a certain sum in stock, notes, bonds, or other securities, the measure of damages is the value[] at the time when they should have been delivered").  The courts thus reject a rule that would make it "necessary to speculate when and if a plaintiff would sell its stock."  *PositiveID Corporation*, 2017 WL 2556991 at *7 (quoting *LG Cap. Funding, LLC v. Vape Holdings, Inc*., 2016 WL 3129185, at *4 (E.D.N.Y. June 1, 2016)).

Accordingly, the market value of the stock to be used in calculating expectation damages is "the mean between the highest and lowest quoted selling prices" on May 2, the date of breach. *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 385 (2d Cir. 2006) (quoting *United States v. Cartwright*, 411 U.S. 546, 551 (1973)).

## III.   Number of Shares and Conversion Price

LG Capital argues that the Magistrate Judge calculated the damages based on a mismatch of conversion price and number of shares.  The Magistrate Judge used a conversion price of $0.00442 for calculating the per-share damages but accepted the number of shares in the conversion notice, which was based on the higher conversion price of $0.005005.  LG Capital argues that if the Court is to use the lower conversion price for purposes of calculating per-share damages, it must also use that lower price for the purposes of calculating the number of shares to which it is entitled upon conversion—resulting in a greater number of shares.

The object of contract damages is to put the non-breaching party "in the same economic position he would have occupied had the breaching party performed the contract." *CardioGenics*, 787 F. App'x. at 3 (quoting *Oscar Gruss & Son*, 337 F.3d at 196).  The Notice of Conversion sent to ExeLED by LG Capital on April 27, 2017 reflected that LG Capital elected to

convert $41,000.26 of principal and $10,028.78 of accrued interest "into that number of shares to be issued pursuant to the conversion of the Note . . . [and] according to the conditions of the [Note]." Dkt. No. 1-9. It also contained the request that ExeLED issue a certificate for "the number of shares of common stock set forth [in the Notice of Conversion] (which numbers are based on the Holder's calculation attached hereto)." *Id.* The calculation, based on the April 27, 2017 date of conversion, reflected an "Applicable Conversion Price" of $0.005005 and the resultant "Number of Shares to be Issued Pursuant to Conversion of the Note" as 10,195,612, leaving an "Amount of Principal Balance Due Remaining on the Note" of $17,937.00. *Id.*

The Court respectfully disagrees with the Recommendation. In calculating the number of shares, one divides the principal and interest to be converted by the price per share. This is because under the Note, the number of shares is not an independent figure that has its own intrinsic meaning. The number of shares is a function of the amount to be converted and the price per share. If one of those factors changes, then the number of shares must necessarily change as well. When the Magistrate Judge ordered Plaintiff to use a new conversion price per share, the old number of shares to be converted became a meaningless number with no relevance to the conversion. The correct approach in determining the number of shares to be handed over is to calculate the correct conversion price according to the provisions of the Note and then divide the principal and interest to be converted by that conversion price.

## IV. Damages for Anticipatory Breach

Plaintiff also argues that the Magistrate Judge calculated the damages from the anticipatory breach incorrectly. The Magistrate Judge used the May 3 date of breach as both the date to measure the conversion price and the date to calculate the market price. Plaintiff argues that this methodology is inconsistent with the terms of the Note—ExeLED would not be in breach unless it failed to deliver the shares within three days of the Notice of Conversion,

rendering the use of May 3, and not some later date, arbitrary.  It further argues that the appropriate dates to use are April 27, 2017 for the conversion price and May 2 for the market price.

LG Capital's argument requires the Court to determine the date on which ExeLED anticipatorily breached the contract and how to measure damages based on that date of breach. As a general matter, the date of anticipatory breach cannot occur *before* Plaintiff anticipates that Defendant will no longer perform.  As such, the date of anticipatory breach cannot have occurred prior to May 2; up until then, Defendant had not yet breached and so Plaintiff had no reason to believe that Defendant would further breach.  On May 2, when ExeLED breached the contract, *see supra*, it became clear to LG Capital that ExeLED would not perform.  "Under the doctrine of anticipatory breach, 'a wrongful repudiation of the contract by one party before the time of performance entitles the non-repudiating party to *immediately* claim damages for total breach,' and will relieve the non-repudiating party of its obligations of future performance."  *Aetna Casualty & Surety Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 587 (2d Cir. 2005) (emphasis added) (quoting *Am. List Corp. v. U.S. News & World Report, Inc.*, 549 N.E.2d 1161, 1165 (1989) (internal citations omitted)); *see also Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 705 N.E.2d 656, 659 (N.Y. 1998) ("[W]hen a party repudiates contractual duties prior to the time designated for performance and before all of the consideration has been fulfilled, the repudiation entitles the nonrepudiating party to claim damages for total breach." (internal quotation omitted)).  LG Capital could have sued the day after May 2 to recover its damages as of May 2.  By anticipatorily breaching, ExeLED deprived itself of the three business days it would have ordinarily had to deliver the shares.  Rather, the breach was full and complete as of May 2 and the damages should be calculated based on that date.  Had the price of the stock

gone down in the following two days, ExeLED would not have been entitled to a reduction of its damages based on that decrease. Likewise, LG Capital is not entitled to an increase in the damages based on any appreciation of the stock in the ensuing days after ExeLED made clear it would not honor the contract. *Cf. Sharma*, 916 F.2d at 826 ("New York courts have thus . . . rejected awards based on what 'the actual economic conditions and performance' were in light of hindsight." (quoting *Aroneck v. Atkin*, 456 N.Y.S.2d 558, 559 (1982))).

Further, Plaintiff is not entitled to calculate damages based on a conversion price for a date earlier than the date of anticipatory breach. Allowing it to do so would be unfairly give it the "hindsight" to choose a more favorable conversion price. *Id.* Plaintiff did not elect to convert all of its principal and interest on April 27; it is thus not entitled to the conversion price it would have had if it elected to do so.

This approach—of using the date of anticipatory breach as the date to calculate the conversion price—is supported by *Union Cap. LLC v. Vape Holdings Inc.*, 2017 WL 1406278. In *Union Capital*, the court stated that "[t]o award damages for this [anticipatory] breach, the Court would take the date of the breach and determine the conversion price [the plaintiff] was entitled to on that date, the number of shares [it] was authorized to convert, and the market price of those shares on the date of the breach." *Id.* at *6; *see also LG Cap. Funding, LLC v. FLASR, Inc.*, 422 F. Supp. 3d 611, 619 (E.D.N.Y. 2018) (adopting these factors). Once those factors have been determined, a court can then use the expectation damages formula discussed *supra* to calculate Plaintiff's anticipatory damages.

## V.    Attorneys' Fees

The Court does not adopt the Magistrate Judge's recommendation to deny Plaintiff an award of any attorneys' fees. As the Report and Recommendation states, the Note clearly provides for attorneys' fees. Dkt. No. 105 at 15-16. "[T]he rule in New York is that 'when a

contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.'" *Diamond D Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir.1992). "[I]n addressing a contractual claim for attorneys' fees, a court must determine what constitutes 'a reasonable amount of fees.'" *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 2010 WL 1141145, at *5 (S.D.N.Y. Mar. 24, 2010) (quoting *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir.1993)).

The Court does not accept Plaintiff's fee request wholesale. The Court may only award "reasonable" fees, and the Magistrate Judge raises several potential issues with the request. First, she notes that several of Plaintiff's entries are block billed. "Block billing is the aggregation of multiple tasks into a single billing entry." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 370 n.3 (2015). Although block billing is not per se prohibited, it impedes the ability of the courts to assess the reasonableness of the fee request and, accordingly, "courts have ordered . . . reductions for block-billing . . . where there was evidence that the . . . block-billing was mixing together tasks that were not all compensable, or not all compensable at the same rate." *Hnot v. Willis Grp. Holdings Ltd.*, 2008 WL 1166309, at *6 (S.D.N.Y. Apr. 7, 2008)*; see also Aiello v. Town of Brookhaven*, 2005 WL 1397202, at *3 (E.D.N.Y. June 13, 2005) (listing cases in this District where the court has reduced fees because of block billing). The Report and Recommendation offers several examples of where this happened. *See* Dkt. No. 105 at 18-19.

Second, the Report and Recommendation notes that Plaintiff's attorneys' fees request includes clerical tasks and improperly high billing by someone not yet admitted to the bar. Both of these issues warrant a reduction of awarded fees. *See Lilly v. City of New York*, 934 F.3d 222,

234 (2d Cir. 2019) ("[D]istrict courts have the legal authority and discretion to either reduce an attorney's hourly rate for time spent on clerical tasks or apply an across-the-board reduction to the hours billed or total fee award to account for time spent on clerical tasks (or block-billed time entries reflecting a mix of clerical and legal work)."); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) ("[A] law clerk cannot expect to garner fees similar to those earned by a junior associate who is license to practice law."); *id.* at *2 n.26 (collecting cases).

The Magistrate Judge also notes that much of the work done in this case by Plaintiff's counsel is similar to work done in other nearly identical cases across the Southern and Eastern Districts. *See* Dkt. No. 105 at 17; *id.* at 5 n.5 (listing examples). This itself supports a more rigorous inquiry into Plaintiff's proposed fees. *See Accelera Innovations, Inc.*, 2018 WL 5456670, at *17 (reducing hours billed because "they were routine for Plaintiff's attorneys who have filed many similar motions to enforce substantively identical notes"); *Cardiogenics*, 2018 WL 2057141, at *3 (same).

The Court also does not adopt the Magistrate Judge's recommendation to deny Plaintiff recovery of its costs on the basis of Rule 54. Dkt. No. 105 at 20. Rule 54 does not apply to costs awarded by contract, as is the case here. "Rule 54 governs a case where attorneys' fees [and costs] are ancillary relief for which a party must make a motion to the court in order to recover . . . and does not . . . apply to fees . . . sought under the terms of a contract." *Hanley v. Herrill Bowling Corp.*, 1996 WL 79324, at *2 (S.D.N.Y. Feb. 23, 1996) (internal quotation marks and citation omitted)*; see also Terra Energy & Res. Techs., Inc. v. Terralinna Pty. Ltd.*, 2014 WL 5690416, at *4 (S.D.N.Y. Nov. 5, 2014) ("[L]etting a clearly erroneous court order stand that

results in a litigant being deprived of attorneys' fees, costs and expenses to which it is entitled under a contractual fee-shifting provision[] would constitute a manifest injustice.").

For the reasons outlined above, the Court does not adopt the recommendation to deny attorneys' fees and costs altogether, but also does not enter an award at this time.  Rather, Plaintiff is permitted—after considering the principles and considerations outlined herein—to resubmit a request for attorneys' fees and costs along with the proposed judgment outlined below, which the Court will consider alongside the proposed judgment.

## CONCLUSION

Having reviewed de novo the portions of the Report and Recommendation as to which Plaintiff objected, the Court does not adopt the damages calculations outlined therein.  The Court also declines to stay judgment in this case, as the Plaintiff is entitled to a timely decision.  *See Janes v. Sackman Bros. Co.*, 177 F.2d 928, 933 (2d Cir. 1949) (noting that "[j]ustice delayed would surely be justice denied" if the court were to stay judgement while waiting for a state court decision).  Plaintiff is directed, within two (2) weeks of the issuance of this Opinion and Order, to submit (a) a proposed judgment that calculates damages in accordance with the reasoning and formulas outlined in this Opinion and Order; (b) a short letter explaining the calculations and figures used; and (c) a request for attorneys' fees and costs.


SO ORDERED.


Dated: October 25, 2021
　　　　New York, New York        _____
　　　　　　　　　　　　　　　　　　　　　　LEWIS J. LIMAN
　　　　　　　　　　　　　　　　　　　　United States District Judge