USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/7/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
:
LG CAPITAL FUNDING, LLC, :
:
Plaintiff, :
: 17-cv-04006 (LJL)
-v- :
: OPINION AND ORDER
EXELED HOLDINGS, INC., f/k/a ENERGIE :
HOLDINGS, INC., :
Defendant. :
:
---------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendant ExeLED Holdings, Inc., f/k/a Energie Holdings, Inc. ("ExeLED"), moves, pursuant to Federal Rule of Civil Procedure 60(b)(1), to vacate the final judgment entered against it on November 22, 2021. Dkt. No. 117.

## BACKGROUND

The relevant background facts have previously been described by Judge Sullivan, to whom the case was previously assigned, in his opinion granting in part and denying in part Plaintiff's motion for summary judgment. Dkt. No. 68. The Court assumes familiarity with that opinion but describes the most salient facts relevant to the disposition of this motion.

LG Capital Funding, LLC ("LG"), is a limited liability company based in Brooklyn that is in the business of making loans to other enterprises. *Id.* at 1. ExeLED is a publicly traded emerging growth company focused on acquiring, and growing, specialized LED lighting companies. *Id.* at 1–2. On August 19, 2015, ExeLED and LG executed two agreements: a Securities Purchase Agreement (the "SPA") and a Convertible Redeemable Note (the "Note," and together with the SPA, the "Contracts"). *Id.* at 2.

The first agreement, the SPA, provides that on the day the agreement was signed, LG would pay ExeLED $58,937.26, less various fees, and that in exchange, ExeLED would deliver the Note to LG. *Id.* LG transferred the required funds, and the Note was issued on August 19, 2015. *Id.* (citing Note at 8). The Note has a face value of $58,937.26, a maturation date of August 16, 2016, and an 8% annual interest rate. *Id.* (citing Note at 1). Under the Note, LG is "entitled, at its option . . . to convert all or any amount of the principal face amount" and interest still outstanding "into shares of [ExeLED's] common stock." *Id.* (quoting Note § 4(a)). To trigger a conversion of debt into stock, LG must simply submit a written notice of conversion to ExeLED. *Id.* (citing Note § 3). The Note allows LG to convert debt into equity at a rate of "65% of the lowest closing bid price" of ExeLED's common stock in the "fifteen prior trading days," including the date on which ExeLED receives the relevant notice of conversion. *Id.* (quoting Note § 4(a)). ExeLED's failure to deliver the requested stock within three days of the receipt of a notice of conversion is an "Event of Default" under the Note. *Id.* (quoting Note § 8(k)). In the case of a default, LG may "consider [the] Note immediately due and payable . . . and may immediately . . . enforce any and all of the rights" permitted by the Note. *Id.* (quoting Note § 8).

On April 27, 2017, LG issued "a notice of conversion to convert $41,000.26 of principal and $10,028.78 of accrued interest" on the Note "into 10,195,612 shares" of ExeLED stock (the "Notice"). *Id.* at 3. ExeLED did not provide any shares in response to the notice of conversion, and its Chief Executive Officer informed LG that ExeLED did not have the shares available to make the conversion and could not increase the number of shares in order to cover the Notice. *Id.*

**PROCEDURAL HISTORY**

Plaintiff filed its complaint against Defendant on May 26, 2017, asserting that Defendant's failure to honor the Notice constituted a breach of the Note and that its stated

intention not to perform its future obligations under the Note constituted an anticipatory breach. Dkt. No. 1.  It filed a first amended complaint on July 20, 2017.  Dkt. No. 26.  On July 19, 2017, Defendant filed an answer to the first amended complaint and a counterclaim.  Dkt. No. 29.

On August 17, 2017, prior to the commencement of discovery, Plaintiff filed a motion for summary judgment along with a memorandum of law and supporting papers.  Dkt. Nos. 34–37. Defendant filed a memorandum of law in opposition to the motion for summary judgment and supporting papers on September 25, 2017.  Dkt. Nos. 38–42.  On October 5, 2017, Plaintiff filed its reply memorandum of law in further support of the motion for summary judgment.  Dkt. No. 47.

Defendant filed an amended answer to the first amended complaint and amended counterclaims on January 15, 2018.  Dkt. No. 59.  The motion for summary judgment thus was denied without prejudice to renewal.  Dkt. No. 57.  Pursuant to the Court's order, *id.*, Plaintiff renewed its motion for summary judgment on February 9, 2018, Dkt. Nos. 63–64, Defendant filed its memorandum of law in opposition to the motion and supporting papers on March 2, 2018, Dkt. Nos. 65–66, and Defendant filed its reply memorandum of law on March 9, 2018, Dkt. No. 67.  On September 28, 2018, the Court issued its memorandum and order granting Plaintiff's motion for summary judgment on liability on Courts 1 and 2 and denying the motion for summary judgment as to the issue of liability on Count 4 and as to damages.  Dkt. No. 68; *LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160, at *5 (S.D.N.Y. Sept. 28, 2018).  The Court concluded that Defendant breached the Note by failing to deliver the 10,195,612 shares in response to the Notice. *ExeLED Holdings, Inc.*, 2018 WL 6547160, at *7. The Court denied Defendant's motion for summary judgment on the theory of anticipatory breach. *Id.* at *8.  The Court also rejected Defendant's argument that the contract was

unenforceable as usurious. *Id.* at *5. After concluding that the Note was not facially usurious, the Court also concluded that the substance of the transaction did not demonstrate that the effective rate of interest exceeded 25% and was therefore usurious. The Court's analysis was as follows:

> ExeLED argues that since "LG knew going into the deal that its return on the debt would be delivered through stock sales," and because LG had an unfettered right to convert its debt into equity at 65% of the lowest price of the stock over the preceding fifteen days, the effective interest rate exceeded 25%. (Opp'n at 14.) But ExeLED's reliance on LG's conversion right is misplaced. Unlike *Hilldair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 340 (S.D.N.Y. 2013), which ExeLED cites for the proposition that "stock payments should be taken into consideration when determining the interest rate" (Opp'n at 14), no stock was transferred to LG when the Note was signed. Instead, LG "simply held an option to convert shares, and it could have elected to obtain repayment in cash, which would clearly not have been usurious." *Union Capital [LLC v. Vape Holdings Inc.]*, 2017 WL 1406278, at *5 [(S.D.N.Y. Mar. 31, 2017)]. Under New York law, "the usurious rate of a loan is measured from the date of the loan." *Sabella v. Scantek Med., Inc.*, No. 08 Civ. 453 (CM) (HBP), 2009 WL 3233703, at *21 (S.D.N.Y. Sept. 25, 2009). *Ex ante*, "any potential profit [LG] might realize" by converting and selling shares "would still be dependent on the market price at the time of the conversion and so, therefore, would be too uncertain to incorporate into an interest rate calculation." *Union Capital*, 2017 WL 1406278, at *5; *see also Phlo Corp. v. Stevens*, No. 00-cv-3619 (DC), 2001 WL 1313387, at *5 (S.D.N.Y. Oct. 25, 2001) ("[I]t was not clear that any effective interest rate in excess of 25% would ever have to be paid, as the value of the warrants was uncertain."). Thus, the Note is not criminally usurious.

*Id.* at *5. The Court scheduled trial on the open issues of anticipatory breach and on damages. Dkt. No. 73.

After Defendant failed to appear for trial, the Court entered a default judgment against Defendant on liability but, after stating that the amount of damages was uncertain, referred the matter to Magistrate Judge Wang for purposes of an inquest. Dkt. No. 85.

Magistrate Judge Wang has described the lengthy proceedings before her that resulted in the report and recommendation. Dkt. No. 105. The Court assumes familiarity with that record. On December 18, 2020, the Magistrate Judge Wang issued her report and recommendation

setting forth her calculation of damages. *Id.* The Magistrate Judge determined that Plaintiff was entitled to damages of $531,556.20. *Id.* at 21. Magistrate Judge Wang also recommended that "any judgment be **STAYED** pending the resolution of *Adar Bays*, and that Plaintiff file the decision in *Adar Bays* within 30 days of its publication. *Id.* at 22. Judge Wang noted that the Second Circuit had certified to the New York Court of Appeals the two questions:

> "1. Whether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest for the purpose of determining whether the transaction violates N.Y. Penal Law § 190.40, the criminal usury law.
>
> "2. If the interest charged on a loan is determined to be criminally usurious under N.Y. Penal Law § 190.40, whether the contract is void ab initio pursuant to N.Y. Gen. Oblig. Law § 5-511."

*Id.* at 21.

On October 25, 2021, this Court issued an Opinion and Order rejecting portions of the Magistrate Judge's recommendation. Dkt. No 107. The Court declined to stay judgment in the case noting that Plaintiff was entitled to a timely decision. *Id.* at 22. On November 22, 2021, the Court entered a final judgment in the amounts of $512,412.19 for breach of contract, $151,461.01 for anticipatory breach of contract, $80,412.50 for attorneys' fees, and $497.97 for costs. Dkt. No. 114.

On September 30, 2022, Defendant filed this motion to vacate judgment with a supporting memorandum of law. Dkt. Nos. 117–18. Plaintiff filed a memorandum of law in opposition to the motion to vacate on October 25, 2022. Dkt. No. 123. On November 1, 2022, Defendant filed a reply memorandum of law in further support of its motion to vacate the judgment. Dkt. No. 124.

**DISCUSSION**

Defendant argues that the Court's final judgment rested on a mistake in rejecting its meritorious affirmative defense of usury. Dkt. No. 118. It argues that the Court's judgment cannot stand in the face of the New York Court of Appeals' decision in *Adar Bays, LLC v. GeneSYS ID, Inc.*, 179 N.E.3d 612 (N.Y. 2021). Dkt. No. 118. Plaintiff does not dispute that the Court's analysis—although consistent with the federal case law at the time—is inconsistent with *Adar Boys*. It argues, however, that Defendant's motion is untimely as it comes more than four years after the Court's order granting summary judgment, that the Court's decision was consistent with the law as it was understood four years ago, and that consideration of the conversion option would not, as a matter of law, make the rate of interest usurious. Dkt. No. 123 at 10–11.

Federal Rule of Civil Procedure 60(b)(1) provides, in relevant part, that a "court may relieve a party . . . from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "As a matter of text, structure, and history, … a 'mistake' under Rule 60(b)(1) includes a judge's errors of law." *Kemp v. United States*, 142 S. Ct. 1856, 1861–62 (2022); *see United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009) ("Rule 60(b)(1) is 'available for a district court to correct legal errors by the court.'" (quoting *In re 310 Assocs.*, 346 F.3d 31, 35 (2d Cir. 2003)); *Ream v. Berry-Hill Galleries, Inc.*, 2022 WL 4292380, at *4–5 (S.D.N.Y. Sept. 16, 2022).

The Court's order granting summary judgment and thus, in turn, its judgment rested on an error of law. As discussed above, the Court's decision granting Defendant summary judgment on its claim of breach of contract rested on the Court's view that the value of the floating-price convertible option embedded in the Note was "too uncertain to incorporate into an interest rate calculation." *ExeLED Holdings, Inc.*, 2018 WL 6547160, at *5. That view had been

expressed both in this case and by the District Court judge in his prior opinion in *Union Capital*, 2017 WL 1406278, at *5.

In *Adar Boys*, however, the New York Court of Appeals rejected that view. The New York Court of Appeals answered both of the certified questions in the affirmative. The court held that if the corporate borrower in a loan transaction establishes that it was charged a rate of interest in excess of 25% "the usurious loan transaction is deemed void and unenforceable, resulting in the uncollectability of both principal and interest." *Adar Bays*, 179 N.E.3d at 616. The court also held that "the value of the floating-price convertible options should be included in the determination of interest." *Id.* at 621. The court held that "the value of floating-price options, measured at the time of the agreement, should be included when determining the rate of interest for purposes of the usury statutes, to the extent such valuation can be proven by reasonable methods." *Id.* at 627. Relying on its own earlier precedents, the New York Court of Appeals held that courts are required "to assess the overall value of the conversion option at the time of the bargain." *Id.* at 624. The Court thus rejected the view expressed by Judge Garcia in his partial dissent that it should follow the approach of the federal courts (including *Union Capital*) that had considered the same issue and had concluded that "[w]here recovery above the legal rate of interest is not guaranteed within the four corners of the relevant contracts, . . . the parties asserting usury did not meet the heavy burden placed on them" to show a usurious rate of interest. *Id.* at 632 (Garcia, J., dissenting in part).

Following the New York Court of Appeals' decision, the Second Circuit vacated the district court's September 20, 2018 order in *Adar Bays* and directed the district court to apply "the principles embodied in the Court of Appeals' opinion," and further instructed that "should the district court determine [that the Note's rate of interest exceeds the criminal usury cap after

7

considering the value of the option] . . . the district court [must] follow the Court of Appeals' clear directive to find the Note void *ab initio*." *Adar Bays, LLC v. GeneSys ID, Inc.*, 28 F.4th 379, 82–83 (2d Cir. 2022). Thereafter, in *LG Capital Funding, LLC v. Cardinal Energy Grp, LLC*, 2022 WL 1215950 (2d Cir. Apr. 22, 2022), the Second Circuit vacated a December 12, 2018 judgment of the district court granting summary judgment to LG Capital Funding, LLC in a similar case and remanded the matter for further proceedings consistent with *Adar Bays*.

As the Magistrate Judge observed in her report and recommendation in this case, "[t]he contract in question herein has similar terms to that in *Adar Bays*." Dkt. No. 105 at 21. Both contracts permitted the lender to convert the debt of the borrower into shares of the borrower's stock at a 35% discount to its lowest trading price over a period of weeks prior to the notice of conversion. *Compare* Note § 4(a) (allowing LG to convert debt into equity at a rate of "65% of the lowest closing bid price" of ExeLED's common stock in the "fifteen prior trading days"), *with Adar Bays*, 179 N.E.3d at 614 (note included an option permitting the lender to convert some or all of the debt into the borrower's shares at a discount of 35% of the lowest trading price over the preceding twenty days). If the borrower in *Adar Bays* raised a question of fact as to the value of the option at the time of the agreement, Defendant here too raised a question of fact as to the value of the option. The Court's conclusion here on summary judgment that Defendant's usury defense did not present questions of fact was thus an error of law.

Plaintiff has a number of responses. None is persuasive. It argues first that the motion to vacate the judgment is untimely because it is made more than four years after the Court's decision granting summary judgment. Dkt. No. 123 at 11–13. The language of Rule 60(b)(1), however, speaks to "a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b)(1). Thus, "[b]y its own terms, Rule 60(b) applies only to judgments that are final." *Transaero, Inc. v. La*

*Fuerza Aerea Boliviana*, 99 F.3d 538, 541 (2d Cir. 1996). "A final judgment or order is one that conclusively determines all pending claims of all the parties to the litigation, leaving nothing for the court to do but execute its decision." *Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008). The Court's decision granting partial summary judgment was not a final judgment; it left open the claim for anticipatory breach of contract as well as the claim for damages. *See Harris v. Millington*, 613 F. App'x 56, 58 (2d Cir. 2018); *Alias v. Wells Fargo*, 2022 WL 392864, at *7 (S.D.N.Y. Feb. 9, 2022); *New Falls Corp. v. Soni Holdings, LLC*, 2021 WL 919110, at *12 (E.D.N.Y. Mar. 8, 2021); *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 2015 WL 4468083, at *1 (S.D.N.Y. July 8, 2015). Plaintiff made this motion within a reasonable time and within one year of the Court's November 22, 2021 final judgment. The motion thus is timely.

Plaintiff argues that Rule 60(b)(1) relief is not available because the Court's decision was consistent with decisions of other federal courts at the time. Dkt. No. 123 at 13–14. However, Rule 60(b)(1) is not limited to "'obvious' legal mistakes"; it encompasses "all mistakes of law made by a judge." *Kemp*, 142 S. Ct. at 1862. Judge Sullivan's task on Plaintiff's motion for summary judgment was to predict how the New York Court of Appeals would rule on the question of whether the value of the option should be considered in calculating the rate of interest. *See DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). Judge Sullivan predicted wrong. Relying on a series of federal district court opinions, he concluded that the Court of Appeals would conclude that the value of the option should not be considered. Only Judge Garcia, in partial dissent, adopted that view. The fact that other federal courts made the same error may mean that it was not obvious; it does not mean it was not an error.

9

Plaintiff cannot avoid this result and an inquiry into the value of the embedded option by tagging the application of *Adar Bays* "retroactive." All decisional law is retrospective in the sense that a court considering the legal consequences of an action taken before the action is challenged in court will apply the decisional law as it exists at the time of decision. *See Song v. Ives Lab'ys, a Div. of Am. Home Prod. Corp.*, 735 F. Supp. 550, 551 (S.D.N.Y. 1990) ("The general rule is that cases are decided 'in accordance with the law existing at the time of decision.'" (quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 662 (1987)). That does not make the decision impermissibly retroactive. "[C]onsonant with the common law's policy-laden assumptions, a change in decisional law usually will be applied retrospectively to all cases still in the normal litigating process," *Gurnee v. Aetna Life & Cas. Co.*, 433 N.E.2d 128, 130 (N.Y. 1982) (citation omitted), and "[a] judicial decision construing the words of a statute . . . does not constitute the creation of a new legal principle," *id*. The Court of Appeals followed cases dating from 1918 and applied principles dating from colonial times in concluding that the 1965 act of the New York legislature required consideration of the value of the option. 179 N.E.3d at 624. The contract at issue in *Adar Bays* was executed on May 24, 2016 and judgment was entered on September 20, 2018. *Adar Bays, LLC*, 28 F.4th at 380; *Adar Bays, LLC v. GeneSYS ID, Inc.*, 341 F. Supp. 3d 339, 345 (S.D.N.Y. 2018). The first note at issue in *Cardinal Energy* was signed in December 2014, summary judgment was granted on December 10, 2018, *see LG Capital Funding, LLC v. Cardinal Energy Grp, Inc.*, 2018 WL 11415507, at *1 (S.D.N.Y. Dec. 10, 2018), and judgment was entered on December 12, 2018, *Cardinal Energy Grp, LLC*, 2022 WL 1215950. In both *Adar Bays* and *Cardinal Energy*, the Second Circuit instructed the district court to apply the principles set forth by the Court of Appeals. There is no reason that this case should be treated any differently. Indeed, there is a certain irony in Plaintiff's position.

Although the contract it relies upon was signed in 2015, all but one of the cases Plaintiff relies upon were decided in 2017 or later and the single case it cites from an earlier date was a 2015 decision of the New York Supreme Court, *see* Dkt. No. 123 at 6–8 (citing, *inter alia*, *LG Capital Funding, LLC v. Sanomedics Int'l Holdings, Inc.*, 2015 N.Y. Misc. 4294, 2015 WL 7429581 (N.Y. Sup. Ct. Nov. 23, 2015)), which did not cite any Court of Appeals' authority for its conclusion that fluctuation in the stock price made it unclear that the interest rate would exceed the legal rate of interest, *id.* at *10; *see also Adar Bays*, 37 N.Y.3d at 348–49 (Garcia, J., dissenting in part).

Finally, Plaintiff argues that consideration of the option would not, as a matter of law, make the rate of interest usurious. Dkt. No. 123 at 14–15. But that is precisely the point. The Court previously held as a matter of law that the option could not make the rate of interest usurious. On that basis, it granted Plaintiff summary judgment and precluded any inquiry into the value of the option. That was error. It follows that the judgment must be vacated for Defendant to have the opportunity to prove the value of the option and that, considering its value, the interest rate is usurious and the Note is unenforceable.

## CONCLUSION

Defendant's motion to vacate the final judgment is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 117.

SO ORDERED.

Dated: November 7, 2022
      New York, New York

                                                    LEWIS J. LIMAN
                                          United States District Judge